**Philip A. Seplow, Esq.**
**Attorney AZ #004859**
**8808 North Central Ave. #278**
**Phoenix, AZ 85020**
**Tel: (602) 254-8817**
**PhilipSeplowLaw@gmail.com**
**barkerpas@gmail.com**
**Attorney for Eagles Denashu Begay**

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, Plaintiff, | Case No: CR-21-08065-DLR |
| Vs. | |
| Eagles Denashu Begay, Defendant | **OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT** |

**COMES NOW THE** Defendant, Eagles Denashu Begay, by and through undersigned counsel, and for his Objections to the Presentence Investigation Report authored by U.S. Probation Officer, Jonathan P. Spano, and dated July 26, 2022, states as follows:

In regard to Paragraph # 26 (page #9 of the *PSR*), the Defendant files his Objection as he believes the proper base offense level is fourteen (14) as opposed to the suggested offense level of twenty (20).

In Regard to *USSG* 2K2.1(a)(4) – they are not firearms as described in 26 *USC* Sec. 5845(a) because these type of firearms are required to be registered. The implementing regulations of the National Firearms Act are found in Title 27 of the Code of Federal Regulations, part 479 and the prohibited acts of the *NFA* are found in 26 *USC* Sec. 5861.

Thus, the possession of firearms as described in 26 *USC* 5845(a) are subject to penalties under the *NFA* where a violation of 5861 would occur. If a privately manufactured firearm was not made in violation of the 26 *USC* 5861, then the firearm should not be counted as a firearm in 5845(a).

Importantly, the *ATF* has found that all 7 of the *AR* style rifles that the government alleges to be described as firearms in 5845(a) are all privately manufactured and contain no serial numbers, or manufacture markings. The lower receivers of these firearms were made with what the *ATF* calls "receiver blanks." These receiver blanks are also known as 80 per cent receivers which are sold unfinished and require minimal expertise to complete.

At the time of the event and as it currently stands, the *ATF* does not regulate the self-making of a firearm (privately manufactured firearms), unless in the case of firearms described in 5845(a). As it was under the *NFA*, the private maker is required to file a Form One Application, pay a tax of $200 and receive permission **before** the maker is to proceed with the making of his firearm. *See*, attachment A (Application to Make and Register a Firearm). The above-named *Application* asks for the applicant to provide a description of the firearm he or she intends to make and register including a serial number in *Item 4g*.

Under the definition/instructions of the *Application, Sec,* 2 instruction k 6 and 7, it provides detailed instructions for competing *Item 4g*. The instruction reads in relevant part:

> "(6) item 4. Do not alter or modify the serial number of an existing firearm. Enter the existing serial number or if a new firearm, one you create. (7) markings: the maker is required to mark the firearm with the maker's name, city and state as shown in item 3b. All markings are to be in compliance with [27 *CFR* 479.102] 27 *CFR* 479.102 see attachment B."

This section instructs the maker of a firearm to serialize the frame or receiver, a component part of the *AR* 15, that **by definition simply does not exist, infra (emphasis added).** 27 *CFR* 479.102 reads in relevant part,

"(a) you, as a manufacturer, importer, or maker of a firearm, must legibly identify the firearm as follows: (1) by engraving, casting, stamping (impressing), or otherwise conspicuously placing or causing to be engraved, cast, stamped (impressed) or placed on the frame or receiver thereof, an individual serial number."

HERE IS THE RUB: the *AR* 15 lower receiver did not meet the *CFR* definition at the time of the alleged offense because, before August 24, 2022, 27 *CFR* 478.11 defined a frame or receiver as "that part of a firearm that provides housing for the hammer, bolt or breechblock, and firing mechanism and which is usually threaded at its forward portion to receive the barrel."

In *United States v. Jimenez*, 191 F. Supp. 3d 1038 (2016???), and also in *United States v. Rowold*, 429 F. Supp 3d 469, (N.D. Ohio 2019), multiple Courts found that the *AR*-15 lower receiver only contained two of the three required component elements in order to meet the definition of a frame or receiver: that being the hammer and the firing mechanism, holding that the *AR*-15 lower receiver simply **does not** meet the frame or receiver definition.

Although the defendant would have been able to submit the *ATF form 1 Application*, the defendant would have been required to, before making his *AR* style rifles, serialize the frame or receiver, a component part (as noted in Jimenez and Rowold) on the defendant's *AR* style rifles that do not meet the 27 *CFR* 478.11 definition. This would require leaving item 4g. on the *Form 1 Application* blank causing rejection of the application creating a legal impossibility to register the alleged short-barreled firearms.

The base offense level should be 14 because the Defendant, Eagles, was not subject to penalties under 922(g)(1) and cannot be considered a prohibited person for the purpose of 2K2.1(a)(4) for his firearms possession rather the defendant was only subject to violations of 922(g)(1) for his ammunition possession.

It is a vital requirement that 18 USC 922(g) provides that the interstate commerce element must be met. The Government in the case before the bench cannot prove that any of the firearms traveled in interstate commerce as all of the firearms are (were) privately manufactured and contain(ed) no serial numbers or manufacture markings, and as noted by the *PSR*, a box of manufacturing tools was seized. This provides further evidence that the firearms were manufactured in Arizona, and without more, Begay's firearms were simply not possessed in violation of 922(g). Therefore, as to the firearms, Begay was not a prohibited person.

Begay did admit guilt to the possession of the ammunition in or affecting commerce, which is a violation of 922(g), but the "and" is conjunctive in 2K2.1(a)(4)(B) which provides for two types of qualifying weapons, either a semi-automatic firearm capable of accepting a large capacity magazine or a firearm described in 26 *USC* 5845(a), and the Defendant was a prohibited person. Because the firearms were not in violation of 922(g), then the "qualifying weapons" would not apply. Also, the *M25A2* rot control hand grenade was not a destructive device. See Objection to paragraph # 28.

Concerning Paragraph # 27 of the *PSR*, the Defendant Objects to the calculation of fifteen (15) firearms. If the seven (7) firearms were not firearms as described in 5845(a), then the extra offense levels would only be two (2). If the firearms are not firearms as described in 5845(a), then there should be no added levels.

The Defendant objects to paragraph # 28 as the tear-gas grenade was not a destructive device. The device in this case has been properly identified as explosives under 18 *USC* Sec. 841(d) and has not otherwise been identified as a destructive device under 18 *USC* Sec. 921(a)(4) or any other provisions of the *NFA*. *See*, Bates Stamped #000752. Also, under information and belief, the *ATF* has previously held that devices designed for

expelling tear gas or pyrotechnic signals are not weapons and are exempt from the *destructive device* definition.

The Defendant objects to paragraph # 29. There were never any serial numbers on the firearms, so they could not have been altered or obliterated. *See*, the explanation in regard to the Objection to paragraph # 26, *supra*.

Concerning paragraph # 30, the Defendant objects to the following and requests that the words be stricken:

". . . with no serial number, . . ."

Also correct the weight of the marijuana, so that the net with is approximately 28 grams.

Thus, paragraph # 38 should be a total of 15 offense levels after acceptance of responsibility. The Total Offense Level (*TOL*) has been reached by Defendant as follows: 14 for the base offense level plus four levels as stated in paragraph # 30 of the *PSR*, minus three offense levels for acceptance of responsibility.

The Defendant also notes that the description of Count Four on the first page of the *PSR* should only reference ammunition and not a Firearm.

Concerning paragraph # 43 of the *PSR*, this item should not be counted as a Criminal History Point as the offense has been expunged. *See*, the attachment from Kingman Justice Court of Mohave County Case # CR2015-1026, signed by the Judicial Officer on July 20, 2022.

Concerning paragraph # 41 of the *PSR,* it is requested that this Court, to serve the Interests of Justice, not count the one criminal history point for the following reasons: As a matter of timing, from the date of the shoplifting offense to the date of the arrest for the current offense, the time that transpired was exactly 10 years and one day; the Defendant,

like so many people today, was homeless at the time and merely trying to survive; and the Defendant never denied the theft.

Concerning paragraph # 42 of the *PSR*, it is again asked that this Honorable Court discount this particular criminal history point as the Defendant, when living his life as a hobo (homeless train hopper), he believed that he and his girlfriend had permission to ride the rail on that particular car that he was ultimately accused of riding on (in) illegally (dedicated push unit, also known as a *DPU*). One of the railroad workers saw him in a car and asked the Defendant and his girlfriend who at the time was in situated in Needles, California, where they were going and the Defendant stated they were trying to get to Barstow. The railroad worker told him he was on the wrong train and pointed to the train where the couple could ride safely to Barstow. So Mr. Begay and his girlfriend switched trains and they ultimately were arrested in Barstow where they were booked and released. Undersigned counsel doesn't know the mechanics of the Court proceeding, but it certainly appears as if Eagles and his girlfriend had apparent authority to ride that *DPU*.

**RESPECTFULLY SUBMITTED** this 9th day of August, 2022.

s/ Philip A. Seplow<br>
Attorney for Defendant<br>
Eagles Begay

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following registrants:

    Mr. Alexander Samuels, Esquire
    Assistant United States Attorney

I hereby certify that on August 9, 2022, or shortly thereafter, I will serve the attached document on the Defendant, who is a nonregistered participant of the CM/ECF System and via First Class Mail, sending to:

    Eagles Denashu Begay
    Reg. # 78609-408
    c/o CoreCivic,
    P.O. Box 6300,
    Florence, AZ 85132

                                                /s/ Philip Seplow